ADR

ORIGINAL
FILED

AUG 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIF
SAN JOSE

1   FRANK N. DARRAS #128904
    LISSA A. MARTINEZ #206994
2   SHERNOFF BIDART DARRAS ECHEVERRIA, E-FILING
3   3257 East Guasti Road, Suite 300
    Ontario, California 91761
4   Telephone:   (909) 390-3770
    Facsimile:   (909) 974-2121
5   Email: fdarras@sbdelaw.com
6          lmartinez@sbdelaw.com

7   Attorneys for Plaintiff

8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA



11  SUSAN LANGE,

12            Plaintiff,          C08  04047

13      vs.                       COMPLAINT FOR BENEFITS UNDER A
                                  GROUP DISABILITY EMPLOYEE
14                                BENEFIT PLAN          RMW

15  LIFE INSURANCE COMPANY OF
    NORTH AMERICA; and COHERENT,
16  INC. LTD PLAN,                          RS

17            Defendants.

18

19          Plaintiff alleges as follows:

20          1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

21  and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security

22  Act of 1974, 29 U.S.C. § 1101, et seq. (hereafter "ERISA") as it involves a claim by

23  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

24  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

25  § 1331 as this action involves a federal question.

26          2.    The events or omissions giving rise to Plaintiff's claim occurred in this

27  judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the

28  ends of justice so require.

- 1 -
COMPLAINT

COPY

1      3.      The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

2      the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

3      Those avenues of appeal have been exhausted.

4      4.      Plaintiff is informed and believes and thereon alleges that Defendant,

5      COHERENT, INC. LTD PLAN, is an employee welfare benefit plan established and

6      maintained by Coherent, Inc. (which, Plaintiff alleges, does business in the State of

7      California), to provide its employees, including Plaintiff, SUSAN LANGE ("MS. LANGE"),

8      with income protection in the event of a disability, and, is the Plan Administrator.

9      5.      Plaintiff alleges upon information and belief that Defendant, LIFE

10     INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times

11     was, a corporation duly organized and existing under and by virtue of the laws of the

12     State of Pennsylvania; authorized to transact and transacting the business of insurance

13     in this state; and, the insurer and Claims Administrator for the Plan.

14     6.      At all relevant times Plaintiff was, a resident and citizen of the State of

15     California, an employee of Coherent, Inc., its affiliates and/or subsidiaries, and a

16     participant in the Plan.

17     7.      Based upon information and belief, Plaintiff alleges that on or about July 1,

18     1980, Defendant LINA[1] issued Group Policy number LK-5957 to Coherent, Inc.

19     (attached hereto as Exhibit "A") to insure its Plan, and the eligible participants and

20     beneficiaries of the Plan. The Policy, which was delivered in the state of California,

21     promised to pay MS. LANGE monthly benefits for a specified period of time should she

22     become disabled. Therefore, LINA both funds and decides whether the claimants will

23

24

25     _____

26     [1] Although correspondence to MS. LANGE during the administration of this claim has "CIGNA" on the
       letterhead, LINA was the underwriting and issuing company. Additionally, according to correspondence to

27     MS. LANGE on the claim: "'CIGNA' and 'CIGNA Group Insurance' are registered service marks and refer
       to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these

28     subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North
       America..." Therefore, both CIGNA and Life Insurance Company of North America will be referred to as
       "LINA" herein.

SHERNOFF BIDART
DARRAS ECHEVERRIA₃
LAWYERS FOR INSURANCE POLICYHOLDERS

1    receive benefits under the Plan and as such suffers from a structural conflict[2].

2    8.    According to the terms of the Plan, LINA promised to pay benefits as

3    follows:

| Term | Provision |
|---|---|
| Benefit Waiting Period | The Benefit Waiting Period for an Employee will be 90 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to full-time work in his regular job for up to a total of 15 days during the Benefit Waiting Period. The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work. |
| Monthly Benefit | The Monthly Benefit for an Employee for any month is:<br>1. The lesser of:<br>    a. 66 2/3% of the Employee's Basic Monthly Earnings rounded to the nearest dollar; or<br>    b. $5,000; and<br>2. minus Other Benefits for that month.<br><br>The Monthly Benefit will not be less than $50, regardless of any reductions shown in this Schedule. |

[2] Where a plan administrator "both decides who gets benefits and pays for them, ... it has a direct financial incentive to deny claims," and therefore "labors under ... a conflict of interest." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206, 1211 (9th Cir. 2008). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2349-50) (2008) (dual role where administrator both determines eligibility for benefits and funds benefits creates a conflict of interest). Pursuant to *Abatie*, "a reviewing court <u>must always</u> consider the inherent conflict that exists when a plan administrator both administers and funds it." *Saffon*, 511 F.3d at 1211 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006)(emphasis added). "When reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, [the Court] must determine the extent to which the conflict influenced the administrator's decisions and discount to that extent the deference ... accorded the administrator's decision." *Id.* at 1212. As the Supreme Court recently explained, the "conflict of interest...should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to cases where an insurance company administrator has a history of biased claims administration." *Glenn*, 128 S. Ct. at 2351.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

| Term | Provision |
|------|-----------|
| **Duration of Benefits** | The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:<br><br>(1) the date the Employee ceases to be Disabled; or<br><br>(2) whichever of the following dates is applicable to the Employee:<br><br>{SUBTABLE} |
| **Disability** | An Employee will be considered Disabled if because of Injury or Sickness:<br><br>1. he is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience. |
| **Residual Disability** | An Employee will be considered Residually Disabled if, while he is Disabled, he returns to any work for wage or profit. |

Subtable within Duration of Benefits:

| Age When Disability Began | Date Monthly Benefits Cease |
|---------------------------|------------------------------|
| Age 62 or under | The later of: (a) the Employee's 65th birthday; or (b) the date the 42nd Monthly Benefit is payable. |

9.    Just prior to her disability MS. LANGE had been performing the material duties of a Senior Production Planner for Coherent, Inc. However, on or about July 14, 1992, she became disabled under the terms of the Plan.

10.   MS. LANGE subsequently submitted a claim to LINA for payment of benefits under the terms of the Plan. On or about June 18, 1993, LINA wrote to MS. LANGE and stated: "...your claim for Long Term Disability (LTD) benefits has been approved."

11.   LINA continued to pay the claim for approximately thirteen (13) more

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    years, including about eleven (11) years during the "Any Occupation" disability period,

2    prior to unreasonably, arbitrarily and capriciously denying her further benefits.

3        12.    Further substantiating her disability, on or about July 06, 1995, the Social

4    Security Administration advised MS. LANGE that "We have determined that you

5    became disabled on July 14, 1992[3]." To date, MS. LANGE is still receiving social

6    security benefits due to her disability.

7        13.    During the following years LINA had MS. LANGE surveilled a number of

8    times. After the first attempt to document activities inconsistent with her claimed

9    disability, LINA sent a copy of the videotape to one of her treaters, J. Michael Curren,

10    D.O., who responded to LINA with the following confirmation of disability on or about

11    May 12, 2003:

- "...I cannot possibly understand why you would think that would indicate
   this patient is not disabled."

- "I have seen nothing upon examining the patient, nor information received
   from other physicians to whom she has been referred, nor in her past
   medical history, & certainly not in your video that would corroborate your
   believe that she is not disabled."

- "She continues to suffer greatly from the thoracic outlet syndrome for
   which she underwent a couple of surgeries, & unfortunately I do not think
   she will ever improve."

- "I believe this lady is permanently disabled."

22        14.    After receipt of Dr. Curren's letter, LINA continued to pay benefits to MS.

23    LANGE.

24        15.    On or about December 29, 2005, Dr. Alan Hartley wrote the following

[3] According to the Social Security definition of disability, which is more stringent than the subject Plan's Disability definition: "A person is disabled, and thereby eligible for Social Security disability insurance benefits and Supplemental Security Income (SSI), "only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.*" 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B) (emphasis added).

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

letter substantiating MS. LANGE's disability:

- "Ms. Lange has been a patient at my office since May 2004 for…treatment of sciatic neuralgia, low back pain, neck pain and discomfort and headaches."

- "…she has a…medical history that details a gradual decline in her physical condition."

- "Ms. Lange was diagnosed with a thoracic outlet syndrome in 1990 and had surgery to remove the right first rib to relieve pressure on the brachial plexus and the exiting subclavian artery."

- "The surgery was relatively unsuccessful in alleviating her TOS symptoms and weakened the paracervical musculature."

- "She suffered a…heart attack in 2000 and received a stent."

- "She is also being medicated for hypertension."

- "Ms. Lange has had considerable amounts of oral surgery and complains of frequent TMJ pain…"

- "She has had cortisone injections into the lumbar facets and radio wave ablative therapy to reduce pain from the S/1 joint in 2001."

- "She has had intermittent prolotherapy and has tried alternative approaches to reduce her hip and low back pain including acupuncture, chiropractic and massage therapy."

- "At the time of exam she was taking at least 10 prescription drugs including atenolol, synthyroid, neurontin, narco, dilantin, mobic, Lipitor, xanax, ambient, and trazadone."

- "The medications alone are sufficient to prevent her from performing most forms of work."

- "The TOS surgery has weakened the right shoulder girdle so she is unable to lift moderate weights or perform work requiring prolonged use of her

1      hands."

2          •   "Since her initial visit, Ms. Lange has had a neurostimulator implanted as

3              an attempt to reduce her hip pain."

4          •   "It is my understanding that the unit has been largely ineffective."

5          •   "The combination of her weight and hip pain make it unlikely she will be

6              able to perform any job that requires standing for more than 30 minutes."

7      16.     On or about April 6-7, 2006, LINA once again had MS. LANGE surveilled.

8   The surveillance report helped substantiate MS. LANGE's disability as on the first day

9   "the claimant was found to be inactive throughout the day." And, on the second day only

10  45 seconds of film was obtained as MS. LANGE was driven to a medical appointment

11  which had been arranged by LINA.

12      17.     On or about June 14-16, 2006, LINA again had MS. LANGE surveilled,

13  but, once again the results of that surveillance did not establish that she was able to

14  "perform all of the material duties" of any occupation on a sustained and continuous

15  basis. In fact, for two of the days, MS. LANGE was not even observed coming out of her

16  home.

17      18.     After having paid this claim for some thirteen (13) years, on or about July

18  7, 2006, LINA unreasonably, arbitrarily and capriciously denied MS. LANGE any further

19  benefits past June 12, 2006. In so doing, Plaintiff alleges upon information and belief

20  that no physician, on behalf of LINA, reviewed her medical records. Instead the medical

21  record review was conducted by a nurse[4].

22      19.     On or about July 14, 2006, MS. LANGE was again examined by Neal S.

23  Taub, M.D., a Fellow of the American Board of Physical Medicine and Rehabilitation

24  and a board certified pain medicine physician, who subsequently reported the following

25  confirmation of disability:

26          •   "She continues to have intractable back and neck pain."

27

28

[4] According to LINA's letter: "The medical documentation submitted by your attending physicians was reviewed with our Nurse Case Manager.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1      • "She also has been having significantly increased pain in her feet
2         bilaterally."
3      • "She notes that this has significantly diminished her ability to gait more
4         than short distances."
5      • "She...remains permanently and totally disabled."
6      • "She is unable to stand or sit greater than 30 minutes without reclining,
7         and...will not be competitive for full time work even at a sedentary level."
8      20.    On or about August 10, 2006, one of the people who had been hired to
9   provide home assistance to MS. LANGE due to her disability, wrote the following letter
10  to LINA regarding her independent observations of MS. LANGE's disability:
11     • "I am one of Mrs. Lange's caregivers."
12     • "My usual duties are to help with laundry, vacuuming, washing dishes,
13        helping in organization of the home, shopping for, or with, her and
14        transportation to and from doctor appointments, etc."
15     • "Some of the things I have noted about Mrs. Lange are...She has difficulty
16        washing her hair, due to damage to her hand and her TOS. If I am
17        available to assist her, she will ask me to do it. Mrs. Lange...tires herself
18        after a few hours (i.e. doctor's appointments) and has...to rest for the next
19        several days. During this recuperation, she is not as able to focus on
20        conversation and drifts in and out of sleep."
21        ▪ (NOTE: Her need to recuperate after limited activity is actually
22           substantiated by LINA's prior surveillance. She briefly drove to
23           church on one day and no activity was reported for the following
24           two days.)
25     • "Also, her feet swell to the point of being unable to wear shoes, even her
26        extra wide ones."
27     • "...Mrs. Lange has only had 3 'good days' since I started caring for her in
28        April."

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    21.    On or about January 1, 2007, MS. LANGE appealed the denial of her

2    claim with the help of her spouse who wrote the following to LINA to substantiate and

3    clarify her disability:

- "This appeal is written by Susan's husband...on Susan's instruction and behalf because of Susan's inability to type for extended periods and consistently string coherent thoughts into discernable writings."

- "Though her inconsistent mental capacity to function was not a factor in her obtaining LTD, it seems that her mental capacity has diminished considerably since her days as a high performing Sr. Production Planner; I can only presume that this is due to the long term use of her medications and her struggles with the chronic pain associated with her medical condition."

- "...it is assumed that her full pharmacology was not reviewed as a part of her denial. A comprehensive list, complete with dosages and the reason for taking them are shown in Table 1...Methadone...Pain; Trazadone...Neurological; Ambien...Sleep; Xanax...Panic Attacks; Neurontin...Mobic...Swelling in Knees; Lipitor...Heart/Cholesterol; Atenolol...Heart/Blood Pressure; Promethazine[5]...Upset Stomach; Nitroglycerine[6]...Heart Stimulant; Synthroid...Hypo-Thyroid; Lasix...Swelling/Water Retention; Potassium...Replenishment when taking Lasix; Prednisone[7]...Allergic Reaction to Fire Ant Bites; Epi Jr. Pen[8]...Anaphylactic Shock."

---

[5] Side effects of this medication include sedation, dizziness and tiredness.

[6] Side effects of this medication include headache; dizziness; and restlessness.

[7] Side effects of this medication include retention of sodium (salt) and fluid; weight gain; high blood pressure; loss of potassium; headache and muscle weakness; impaired wound healing; stomach ulcers; convulsions; and psychiatric disturbances (depression, insomnia; mood swings; personality changes).

[8] After the injection, one may soon feel nervousness and an increased heart. A pounding heartbeat, sweating, nausea, vomiting, breathing trouble, headache, dizziness and anxiety may also occur.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    • "...she rarely has good days anymore."

2    • "...you have...received adequate medical documentation from accredited

3        and practicing Doctors who are experts in their respective fields...they are

4        the medical professionals interacting with Susan not...[LINA's] Nurse

5        Case Manager or...Vocational Rehabilitation Consultant."

6    • "...we have repeatedly requested that others who see Susan in her daily

7        life be interviewed."

8    22.    On or about January 24, 2007, Dr. Taub wrote the following letter to certify

9    MS. LANGE's ongoing disability:

10    • "Ms. Susan Lange is a patient under my care due to chronic intractable

11        diffuse spinal and extremity pain."

12    • "She additionally has a history of coronary artery disease and is status

13        post the previous myocardial infarction."

14    • "The patient requires high doses of pain medication, and continues to

15        have severe functional impairments."

16    • "She...is permanently and totally disabled, and...cannot function...[at]

17        even a sedentary level..."

18    23.    On or about January 29, 2007, MS. LANGE was evaluated by Dr. Alan D.

19    Hartley, who subsequently reported the following:

20    • "Ms. Lange presents today for re-examination regarding her symptoms of

21        widespread corporeal pain, headaches, cervicalgia, left hip pain and right

22        knee pain."

23    • "Her medical history is largely unchanged since last exam."

24    • "Salient information includes history of motor vehicle trauma, laceration of

25        the right forearm, diagnosis and surgery for right-sided thoracic outlet

26        syndrome (1st rib removed), diagnosis of hypothyroidism, heart attack, and

27        placement of a spinal cord stimulator for chronic leg pain."

28

1    • "Her medications include Methadone[9], Xanax[10], Ambien[11], Synthroid[12],

2    Antenolol[13], Lasix[14], Neurontin[15], Lipitor[16] and Mobic[17]."

3    • "Her chief complaints are bilateral arm/shoulder/neck pain, worse on the

4    right, muscle pain throughout her body, and left hip and lower back pain."

5    • "She also reports frequent headaches, knee pain, feet pain...loss of

6    coordination, nausea, intermittent tingles/numbness in the hands and feet,

7    muscle fatigue and dysphagia."

8    • "Her chief complaints are all aggravated by activity and stress."

9    • "Palpatory exam reveals trigger points or painful muscular

10    origins/insertions in 18/18 of the recognized tender point regions used to

11    diagnose Fibromyalgia."

12    • "Cervical ranges of motion are abnormal."

13    • "Lumbar ranges of motion are abnormal..."

14    • "Knee ROM are limited by both pain (on the right) and by significant

15    _____

16    [9] Side effects of this medication include stomach upset; blurred vision; drowsiness; constipation;
17    dizziness; and lightheadedness.

18    [10] Side effects of this medication include drowsiness and dizziness.

19    [11] Side effects of this medication include daytime drowsiness; dizziness; lightheadedness; constipation;
and diarrhea.

20    [12] This medication is used to replace the hormone that is normally produced by the thyroid gland for a
21    condition known as hypothyroidism. Symptoms of low thyroid levels include fatigue, muscle aches,
constipation, dry skin, weight gain, slow heart rate, sensitivity to cold, or dry brittle hair that tends to fall
22    out easily. . Headache, nervousness, trembling, sweating, increased appetite, diarrhea, weight loss or
insomnia may occur.

23    [13] Side effects of this medication, which is used to treat chest pain or high blood pressure, include
24    dizziness; lightheadedness; drowsiness; tiredness; nausea; diarrhea; and vision problems.

25    [14] Side effects of this medication include low blood pressure; water and electrolyte depletion; ringing in
the ears; pancreatitis; nausea; abdominal pain; and dizziness.

26    [15] Side effects of this medication include drowsiness; dizziness; unsteadiness; fatigue; vision changes,
27    and nausea.

28    [16] Side effects of this medication include headache; diarrhea; stomach/abdominal pain; and joint pain.

[17] Side effects of this medication include stomach upset; nausea; drowsiness; and diarrhea.

1    dependent edema and joint swelling."

2    •    "The most significant diagnosis...is a severe form of Fibromyalgia."

3    •    "She had significant tenderness in all eighteen of the accepted tender
4         points."

5    •    "I believe this condition is exacerbated by widespread myofascial pain
6         syndromes..."

7    •    "She has all the signs of heart failure."

8    •    "She is on a lot of medications that have detrimental side effects."

9    •    "I cannot comprehend how, in her current condition that she can be an
10        effective member of the work force."

11        24.    However, on or about March 14, 2007, LINA unreasonably, arbitrarily and

12   capriciously upheld its prior denial. In so doing, LINA relied upon the opinions of a highly

13   conflicted physician employed by LINA who never examined MS. LANGE, and who,

14   Plaintiff alleges upon information and belief, did not conduct a complete review of MS.

15   LANGE's extensive medical history. This reliance upon an in house physician instead of

16   the reports of her examining doctors will further heighten the level of skepticism with

17   which this court will view this conflicted administrator's decision.

18        25.    Despite LINA's unreasonable, arbitrary and capricious finding, MS.

19   LANGE continues to be disabled under the terms of the Plan as evidenced not only by

20   medical records from her treating physicians, but also by a Functional Capacity

21   Evaluation that was conducted on or about April 23, 2007. According to the examiner's

22   findings: "The actual FCE results indicate that Ms. Lange is not able to work..."

23        26.    To date, even though MS. LANGE has been, and remains, disabled, LINA

24   has not paid MS. LANGE any disability benefits beyond on or about June 12, 2006. The

25   arbitrary and capricious nature of LINA's denial decision is evidenced by, but not limited

26   to, the following:

27        •    LINA engaged in procedural violations of its statutory obligations under

28             ERISA, including, but not limited to, failing to promptly identify the

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

- 12 -
COMPLAINT

1    medical consultants who reviewed her file; failing to advise MS. LANGE

2    of what specific documentation it needed from her to perfect her claim;

3    and, failing to provide a complete copy of all documents, records, and

4    other information relevant to his claim despite a request by Plaintiff in

5    violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

6    •    LINA did not give proper weight to the Social Security Administration's

7    continued finding that MS. LANGE was disabled from any occupation[18];

8    •    LINA ignored the obvious, combed the record and has taken selective

9    evidence out of context as a pretext to deny Plaintiff's claim; and,

10   •    LINA ignored the opinions of MS. LANGE's treating physicians.

11   Deference should be given to the treating physician's opinions as there

12   are no **specific**, **legitimate** reasons for rejecting the treating

13   physician's opinions which are based on **substantial evidence** in the

14   claim file.  Further, the opinions of LINA's highly conflicted **physicians'**

15   opinions do not serve as **substantial evidence**, as they are not

16   **supported by evidence** in the claim file nor are they **consistent with**

17   **the overall evidence** in the claim file.

18       27.    For all the reasons set forth above, the decision to deny disability

19   insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely

20   contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly,

21   LINA abused its discretion in deciding to deny this claim as the evidence shows its

22   denial decision was arbitrary and capricious. Further, LINA's denial decision and actions

23   heighten the level of skepticism with which a court views a conflicted administrator's

24   decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006)

25   and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

26       28.    As a direct and proximate result of the LINA's failure to provide MS.

27

28

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1  LANGE with disability benefits, MS. LANGE has been deprived of said benefits from on

2  or about June 12, 2006 to the present date.

3      29.    As a further direct and proximate result of the denial of benefits, MS.

4  LANGE has been required to incur attorney fees to pursue this action, and is entitled to

5  have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g)

6  (1).

7      30.    A controversy now exists between the parties as to whether MS. LANGE

8  is disabled as defined in the Plan.  Plaintiff seeks the declaration of this Court that she

9  meets the Plan definition of disability and thus she is entitled to benefits from the Plan.

10 In the alternative, Plaintiff seeks a remand to the Plan Administrator for a determination

11 of Plaintiff's claim consistent with the terms of the Plan.

12      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

13     1.    An award of benefits in the amount not paid MS. LANGE from on or about

14 June 12, 2006, to the date of judgment herein, together with interest at the legal rate on

15 each monthly payment from the date it became due until the date it is paid; or, in the

16 alternative, a remand to the Plan Administrator for a determination of Plaintiff's claim

17 consistent with the terms of the Plan;

18     2.    An order determining MS. LANGE is entitled to future disability payments

19 so long as she remains disabled as defined in the Plan;

20     3.    An order requiring Defendants to pay $110 a day, from the date first

21 requested, for each day in which Defendants failed or refused to comply with Plaintiff's

22 requests for information which Defendants was required, by statute/regulation, to furnish

23 pursuant to ERISA section 502(c) [29 USC sec. 1132(c)].

24 //

25 //

26 //

27

28 [18] A Plan administrator may not arbitrarily disregard a favorable ruling by the Social Security
Administration as, at a minimum, it provides support for the conclusion that an administrative agency

1       4.     For reasonable attorney fees incurred in this action; and

2       5.     For such other and further relief as the Court deems just and proper.

3

4    Dated:  August 19, 2008         SHERNOFF BIDART DARRAS
                                ECHEVERRIA, LLP

5

6                                 FRANK N. DARRAS

7                                 Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

charged with examining MS. LANGE's medical records found objective support for its favorable decision.

LI.. INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

COHERENT, INC.

RECEIVED

SEP 26 1991

GISD-SRO
WALNUT CREEK OFFICE

(herein called the Policyholder)

Group Policy No.: LK-5957                    Effective Date:  July 1, 1991

This Amendment will be in effect on the Effective Date shown above only for insured
Employees in Active Service on that date.  If an Employee is not in Active Service on
the date his insurance would otherwise become effective, it will be effective on the
date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy and any Certificate
delivered under the Group Policy are amended as follows:

The section entitled "Payment of Family Benefits" as set forth in the Policy and
Certificate is hereby changed to read as follows:

   Family Benefits will be payable Monthly beginning one month after the Employee's
   death.  Family Benefits will be paid to the Employee's lawful spouse if living.  If
   the lawful spouse is not living when any Family Benefit is due, it will be paid in
   equal shares to each child of the Employee.  Family Benefits will be paid to the
   estate of the Employee, if there is no lawful spouse or child.

Except for the above, this amendment does not change the policy and certificate in any
way.

FOR THE COMPANY

By    SPECIMEN

Registrar _Naun E. Meekey_

Date  September 9, 1991

TL-003928                         000016                    EXHIBIT A

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

COHERENT. INC.

(herein called the Policyholder)

Group Policy: LK-5957                    AUG 27 1990          Effective Date:  January 1, 1991

If this Amendment affects the Company's obligation to pay benefits it will be in effect
only for insured Employees in Active Service on the Effective Date shown above.

If an Employee is not in Active Service on the date his insurance would otherwise
become effective, it will become effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Commencing with the effective date of this amendment the anniversary date of the Policy sha
be January 1.

Except as specifically provided above, the insurance provided under this Amendment is
subject to all of the terms and conditions in the Policy.

It is agreed that the Amendment will be made a part of the Policy, but not unless both
the Company and the Policyholder have hereto affixed their respective signatures.

**FOR THE COMPANY**                           **FOR THE POLICYHOLDER**

By

SPECIMEN
                                              By_____
                                                          (Signature)
Registrar _Karen E. Sleekey_

Date___August 14, 1990_____             Title_____

Amendment 5

EXHIBIT A

000017

LIFE INSURANCE COMPANY OF NORTH AMERICA
1600 ARCH STREET, PHILADELPHIA, PA 19101
A STOCK INSURANCE COMPANY

RECORDED

**GROUP
LONG TERM DISABILITY
INCOME POLICY**

(Non-Participating)

Group Policy No. LK-5957

Policy Delivered In: California

Policy Effective Date: July 1, 1980

Policy Anniversary Date: July 1

Amended as of: July 1, 1990

Premium Due Dates: July 31 and the last day of each calendar month thereafter.

This is a contract between us, the Life Insurance Company of North America, and you,

COHERENT INC.
3210 Porter Drive
Palo Alto, California    94303

(the Policyholder).

In return for your application, and for the payment of premiums as set forth in this policy, we agree to pay the benefits described in this policy. These benefits are subject to all of the terms of this policy, including any riders, endorsements, and amendments.

This policy goes into effect on the Policy Effective Date, 12:01 a.m. at your address. The policy will stay in force as long as the premium is paid, until terminated by you or us.

This contract shall be governed by the laws of the state in which it is delivered.

IN WITNESS WHEREOF, we have signed this policy at Philadelphia, PA.

Registrar

GORDON L. MURPHY, P

SPECIMEN

EXHIBIT A

000018

LONG TERM DISABILITY INCOME POLICY

CONTENTS

I.   BENEFITS

PAGE

Benefit Waiting Period and Benefit Amount
Insuring Provisions                                    7
Payment of Benefits                                    8
Schedule                                              11
                                                       7

II.   PREMIUMS

Calculation of Premiums and Rate
Changes in Premium Rates                               9
Due Dates                                              9
Grace Period                                           9
Payment of Premiums                                   10
Waiver of Premium                                      9
                                                       6

III.   OTHER PROVISIONS

Cancellation of Policy
Certificate                                           10
Claims, Forms, Notice of Claim                        12
Definitions                                           12
Effective Date of Insurance                            3
Eligibility of Insurance                               5
Extension of Benefits after Cancellation               4
Termination of Insurance                               6
                                                       6

This policy includes the following attached forms on date of issue:

EXHIBIT A

000019

LONG TERM DISABILITY INCOME POLICY

## DEFINITIONS

### (Applicable to Class I Only)

**EMPLOYER.** The term Employer means the Policyholder and all Affiliated Employers shown in the "Affiliated or Subsidiary Employers" rider.

**EMPLOYEE.** The term Employee means a full-time Employee of the Employer, but does not include Employees who are part-time or temporary or who normally work less than 30 hours a week for the employer.

**ACTIVE SERVICE.** An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if he is performing in the usual way all of the regular duties of his work for the Employer on a full time basis on that day, either at one of the Employer's usual places of business or at some location to which the Employer's business requires him to travel. An Employee will be deemed in Active Service on a day which is not one of the Employer's scheduled work days only if he was in Active Service on the preceding scheduled work day.

**INJURY.** The term Injury means an accidental bodily injury.

**SICKNESS.** The term Sickness means a physical or mental illness. It also includes pregnancy.

**RETIREMENT PLAN.** The term Retirement Plan means any defined benefit plan or defined contribution plan (including a profit sharing plan) sponsored by the Employer. It does not include: (1) an individual deferred compensation agreement; (2) a profit sharing or any other retirement or savings plan that is maintained in addition to a defined benefit or other defined contribution pension plan; or (3) any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

000020

**EXHIBIT A**

LONG TERM DISABILITY INCOME POLICY

## DEFINITIONS

### (Applicable to Class II Only)

**EMPLOYER.** The term Employer means the Policyholder and all Affiliated Employers shown in the "Affiliated or Subsidiary Employers" rider.

**EMPLOYEE.** The term Employee means a full-time Employee of the Employer, but does not include Employees who are part-time or temporary.

**ACTIVE SERVICE.** An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if he is performing in the usual way all of the regular duties of his work for the Employer on a full time basis on that day, either at one of the Employer's usual places of business or at some location to which the Employer's business requires him to travel. An Employee will be deemed in Active Service on a day which is not one of the Employer's scheduled work days only if he was in Active Service on the preceding scheduled work day.

**INJURY.** The term Injury means an accidental bodily injury.

**SICKNESS.** The term Sickness means a physical or mental illness. It also includes pregnancy.

**RETIREMENT PLAN.** The term Retirement Plan means any defined benefit plan or defined contribution plan (including a profit sharing plan) sponsored by the Employer. It does not include: (1) an individual deferred compensation agreement; (2) a profit sharing or any other retirement or savings plan that is maintained in addition to a defined benefit or other defined contribution pension plan; or (3) any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

EXHIBIT A

000021

## DEFINITIONS (Continued)

**BASIC EARNINGS.** The term Basic Earnings means the Employee's rate of pay reported by the Employer. It does not include overtime, bonus, additional compensation or pay for more than 40 hours a week.

For Sales Personnel, the term basic earning will include base salary plus 90% of targeted sales commissions. Targeted sales commissions are defined as the additional compensation an employee is eligible to receive if he/she achieves 100% of their fiscal year sales goals.

Basic Earnings are determined initially on the date the Employee becomes insured. A change in the amount of Basic Earnings will be considered effective on the date of the change. If the Employee is not in Active Service on that day, no increase in Basic Earnings will be considered effective until he returns to Active Service for one full day. In no event will an increase in an Employee's Basic Earnings be considered effective if it occurs:

(1)  between separate periods of Disability which are considered one period under the Successive Periods of Disability provision; or

(2)  during a Benefit Waiting Period.

**INDEXED BASIC EARNINGS.** An Employee's Indexed Basic Earnings is an amount determined as follows:

For the first year the Employee is Disabled, his Indexed Basic Earnings will be equal to his Basic Earnings.

After the Employee has been Disabled for 1 year, his Basic Earnings will be increased on each annual anniversary of the date he became Disabled. The amount of each increase will equal A or B, whichever is less where:

A = 10% of the Employee's Indexed Basic Earnings during the preceding year of Disability.

B = The rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

The Employee's Basic Earnings will not be decreased by a drop in the Consumer Price Index (CPI-W).

CPI-W means the Consumer Price Index for Urban wage Earners and Clerical Workers published by the US Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

000022

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

## DEFINITIONS (Continued)

**DISABILITY.** An Employee will be considered Disabled if because of Injury or Sickness:

1. he is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience.

**RESIDUAL DISABILITY.** An Employee will be considered Residually Disabled if, while he is Disabled, he returns to any work for wage or profit.

000023

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

## ELIGIBILITY FOR EMPLOYEE INSURANCE

Each Employee in one of the Classes of Eligible Employees shown below will become eligible for Employee Insurance on the day he completes the Waiting Period, if any. An Employee who was previously insured and whose insurance ceased must satisfy the New Employee Group Waiting Period to become insured again. If the insurance on an Employee ceased because he was no longer employed in a Class of Eligible Employees, he is not required to satisfy any Waiting Period if he again becomes a member of a Class of Eligible Employees within one year after his insurance ceased.

**INITIAL EMPLOYEE GROUP.** The Initial Employee Group is made up of Employees:

(1) in the employ of an Employer on the Effective Date of the policy; or

(2) in the employ of an Employer on the date that Employer becomes an Affiliated Employer.

**NEW EMPLOYEE GROUP.** The New Employee Group is made up of Employees whose employment with an Employer starts after the Effective Date of the policy.

**WAITING PERIOD.**
    Initial Employee Group:
        None

    New Employee Group:
        Upon completion of one month of Active Service with the Employer.

**CLASSES OF ELIGIBLE EMPLOYEES.**

Class 1      All active full-time employees of the Policyholder over age 18 and regularly working a minimum of 30 hours per week.

Class 2      Dot Farrand

EXHIBIT   A

000024

LONG TERM DISABILITY INCOME POLICY

## EFFECTIVE DATE OF EMPLOYEE INSURANCE

Each Employee will become insured for Employee Insurance on the date he becomes eligible for it. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will become effective on the date he returns to Active Service.

000025

EXHIBIT   A

LONG TERM DISABILITY INCOME POLICY

## TERMINATION OF INSURANCE

The insurance on an Employee will cease on the earliest date below:

(1) the date the Employee ceases to be in a Class of Eligible Employees or ceases to qualify as an Employee;

(2) the last day for which the Employee has made a required premium contribution for the insurance;

(3) the date the policy is cancelled;

(4) the date the Employee's Active Service ends, except as set forth below.

    (a) If the Employee's Active Service ends due to Disability for which Monthly Benefits are or may become payable, the insurance will continue while that Disability continues during the Benefit Waiting Period and thereafter but only for as long as Monthly Benefits are payable for Disability or Residual Disability.

    (b) If the Employee returns to Active Service in a Class of Eligible Employees as soon as Disability ceases, the insurance will be reinstated when the Policyholder pays the premium for him.

(5) If the Employer insures his Employee as a member of a trade association or an insurance trust fund, on the date that the Employer no longer participates.

## WAIVER OF PREMIUM

Premium for an Employee will be waived while Monthly Benefits for Disability or Residual Disability are payable to him.

## EXTENSION OF BENEFITS AFTER CANCELLATION

Payment of Monthly Benefits will not be affected by cancellation of this policy as long as the Disability begins while this policy is in force.

000026

EXHIBIT A

## CONVERSION PRIVILEGE

**HOW AND WHEN TO CONVERT.** When an Employee's Long Term Disability Insurance under this policy ceases, he may be eligible to be insured under a group policy providing converted long term disability benefits (called Converted Insurance) only if he: (1) is Entitled to Convert; and (2) applies in writing and pays the first premium for Converted Insurance to the Insurance Company within either of the following periods of time after the date his insurance under this policy ceases:

(a) within 31 days, without evidence of good health; or

(b) after 31 days but not more than 62 days, with evidence of good health.

**ENTITLED TO CONVERT.** An Employee is Entitled to Convert Long Term Disability Insurance only if:

(1) he has been insured for at least 12 consecutive months under this policy or under this and a prior Long Term Disability group policy issued to the Policyholder; and

(2) his insurance under this policy ceased because he was no longer in Active Service because of resignation, involuntary termination, layoff or an uninsured leave of absence.

**NOT ENTITLED TO CONVERT.** An Employee is not Entitled to Convert if:

(1) he is no longer in a Class of Eligible Employees;

(2) he has attained age 70;

(3) he has retired;

(4) he is not in Active Service because of disability; or

(5) this policy is cancelled for any reason.

**CONVERTED INSURANCE.** Converted Insurance will be provided under the plan of benefits offered by the Insurance Company at the time the first premium is received.

A certificate under the group converted policy will be issued to the Employee describing his benefits. Converted Insurance will take effect on: (a) the day after the Employee's insurance under this policy ceases; or (b) in the case that an Employee is required to submit evidence of good health, the day the Insurance Company accepts the evidence. The premium on the day it takes effect will be based on: (a) class of risk; (b) age; and (c) benefits.

The Insurance Company or the Policyholder will give the Employee further details of the available Converted Insurance.

EXHIBIT A

000027

### SCHEDULE

### (Applicable to Class I Only)

**BENEFIT WAITING PERIOD.** The Benefit Waiting Period for an Employee will be 90 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to full-time work in his regular job for up to a total of 15 days during the Benefit Waiting Period. The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work.

**MONTHLY BENEFIT.** The Monthly Benefit for an Employee for any month is:
1.  The lesser of:
    a.  66 2/3% of the Employee's Basic Monthly Earnings rounded to the nearest dollar;
    or
    b.  $5,000; and
2.  minus Other Benefits for that month.

The Monthly Benefit will not be less than $50., regardless of any reductions shown in this Schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

**RESIDUAL DISABILITY BENEFIT.** The Monthly Benefit for any month during which the Employee is Residually Disabled will be:
1.  the Monthly Benefit as figured above for the first 12 months Residual Disability Benefits are payable; and
2.  the Monthly Benefit as figured above minus 50% of the Employee's monthly earnings received while he is Residually Disabled after the first 12 months Residual Disability Benefits are payable.

If, during any month the Employee returns to work the sum of his Residual Disability Benefit, his earnings, and any Other Benefits, exceed:
1.  100% of his Indexed Basic Monthly Earnings for the first 12 months benefits are payable for Residual Disability; or
2.  80% of his Indexed Basic Monthly Earnings after the first 12 months benefits are payable for Residual Disability;
his Residual Disability Benefit will be further reduced by such excess amount.

The Residual Disability Benefit will continue until the earlier of the following dates:
1.  the date the Employee is no longer Disabled; or
2.  the date Monthly Benefits are no longer payable.

The Insurance Company will, from time to time, review the Employee's status and may require an account of his earnings and proof of continued Disability.

The Monthly Benefit during a period of Residual Disability will not be less than $50., regardless of any reductions shown in this Schedule. Residual Disability Benefits will be pro-rated if payable for any period less than a month.

000028

EXHIBIT A

## SCHEDULE

### (Applicable to Class II Only)

**BENEFIT WAITING PERIOD.** The Benefit Waiting Period for an Employee will be 90 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to full-time work in his regular job for up to a total of 15 days during the Benefit Waiting Period. The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work.

**MONTHLY BENEFIT.** The Monthly Benefit for an Employee for any month is:
1. The lesser of:
   a. 66 2/3% of the Employee's Basic Monthly Earnings rounded to the nearest dollar;
      or
   b. $3,000; and
2. minus Other Benefits for that month.

The Monthly Benefit will not be less than $50., regardless of any reductions shown in this Schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

**RESIDUAL DISABILITY BENEFIT.** The Monthly Benefit for any month during which the Employee is Residually Disabled will be:
1. the Monthly Benefit as figured above for the first 12 months Residual Disability Benefits are payable; and
2. the Monthly Benefit as figured above minus 50% of the Employee's monthly earnings received while he is Residually Disabled after the first 12 months Residual Disability Benefits are payable.

If, during any month the Employee returns to work the sum of his Residual Disability Benefit, his earnings, and any Other Benefits, exceed:
1. 100% of his Indexed Basic Monthly Earnings for the first 12 months benefits are payable for Residual Disability; or
2. 80% of his Indexed Basic Monthly Earnings after the first 12 months benefits are payable for Residual Disability;
his Residual Disability Benefit will be further reduced by such excess amount.

The Residual Disability Benefit will continue until the earlier of the following dates:
1. the date the Employee is no longer Disabled; or
2. the date Monthly Benefits are no longer payable.

The Insurance Company will, from time to time, review the Employee's status and may require an account of his earnings and proof of continued Disability.

The Monthly Benefit during a period of Residual Disability will not be less than $50., regardless of any reductions shown in this Schedule. Residual Disability Benefits will be pro-rated if payable for any period less than a month.

000029



LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

OTHER BENEFITS. Other Benefits include:

(1) any amounts which the Employee or his dependents receive on account of his disability under:

    (a) any group or franchise insurance or similar plan for persons in a group;

    (b) the Canada and Quebec Pension Plans;

    (c) any local, state, provincial or federal government disability or retirement plan or law;

    (d) any salary or wage continuance plan of the Employer;

    (e) the Jones Act; or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;

    (f) any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2) any disability or Old Age benefits payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive*) on his own behalf;

(3) any disability or Old Age benefits payable under the Federal Social Security Act which the Employee receives (or is assumed to receive*) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt*) of such benefits; and

(4) any retirement benefits which an Employee receives under: (a) a Retirement Plan sponsored by the Employer; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Insurance Act.

*See the Assumed Receipt of Benefits provision.

OTHER INSURANCE. If there is other Group Disability insurance which:
    a) applies to the same claim for Disability; and
    b) contains the same or similar provision for reduction because of Other Benefits;

the policy shall be liable for its pro rata share of the total claim.

"Pro rata share" means the proportion of the total benefit that the amount payable under one policy, in the absence of such other insurance, bears to the total applicable benefits under all such policies.

000030

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

**OTHER BENEFITS.** Other Benefits include:

(1) any amounts which the Employee or his dependents receive on account of his disability under:

    (a) any group or franchise insurance or similar plan for persons in a group;

    (b) the Canada and Quebec Pension Plans;

    (c) any local, state, provincial or federal government disability or retirement plan or law;

    (d) any salary or wage continuance plan of the Employer;

    (e) the Jones Act; or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;

    (f) any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2) any disability or Old Age benefits payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive*) on his own behalf;

(3) any disability or Old Age benefits payable under the Federal Social Security Act which the Employee receives (or is assumed to receive*) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt*) of such benefits; and

(4) any retirement benefits which an Employee receives under: (a) a Retirement Plan sponsored by the Employer; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Insurance Act.

*See the Assumed Receipt of Benefits provision.

**OTHER INSURANCE.** If there is other Group Disability insurance which:
    a) applies to the same claim for Disability; and
    b) contains the same or similar provision for reduction because of Other Benefits;

the policy shall be liable for its pro rata share of the total claim.

"Pro rata share" means the proportion of the total benefit that the amount payable under one policy, in the absence of such other insurance, bears to the total applicable benefits under all such policies.



000031

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

ASSUMED RECEIPT OF BENEFITS.

If an Employee is covered under the Federal Social Security Act, for any disability or Old Age benefits for himself and his dependents, he will be assumed to be receiving such benefits for himself.  These assumed benefits will be in amount the Insurance Company estimates he and his dependents, if applicable are eligible to receive.  This assumption will not be made if the Employee gives the Insurance Company proof that:

  (1)  he has applied for these benefits; and

  (2)  payments were denied.

However, if payments for disability were denied solely because the disability was not expected to last at least 12 consecutive months, the Employee will be assumed to be receiving such benefits after his disability has continued for 12 consecutive months.  This assumption will not be made if he gives the Insurance Company proof that:

  (1)  he has reapplied for benefits; and

  (2)  payments were again denied.

The Insurance Company will not assume receipt of, nor reduce the Monthly Benefit by, any elective, actuarially reduced, early retirement benefits under such laws until the Employee actually receives such benefits.

INCREASES IN OTHER BENEFIT.

The Insurance Company will not consider any cost of living increase in any Other Benefits which is effective after:

  (1)  the first payment of such Other Benefit becomes due; and

  (2)  Monthly Benefits become payable under the policy.

RECOVERY OF OVERPAYMENTS

If the Monthly Benefit for any month is overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods:

  (1)  a deduction of the overpaid amount from any future payments by the Insurance Company; or

  (2)  a lump sum repayment by the Employee of the overpaid amount.

**EXHIBIT A**

000032

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

LUMP SUM PAYMENTS.

Any Other Benefits paid in a lump sum (except as shown below) will be deemed to be
paid in monthly amounts prorated over the time for which the sum was paid.  If no
such time is stated, the lump sum will be prorated monthly over the expected life
span of the Employee.  The Insurance Company will determine that expected life span.

Lump Sum Payments under:

    (1)  a Retirement Plan will be deemed to be paid in the monthly amount which:

        (a)  is provided by the standard annuity option under the Plan, as
            identified by the Policyholder; or

        (b)  is prorated under a standard annuity table over the expected life
            span of the Employee (if the Plan does not have a standard annuity
            option);

    (2)  the Jones Act or any workers' compensation, occupational disease or
       similar law (which includes benefits paid under a Compromise and Release)
       will be deemed to be paid monthly;

        (a)  at the rate stated in the award;

        (b)  at the rate paid prior to the lump sum (if no rate is stated in the
            award); or

        (c)  at the maximum rate set by the law (if no rate is stated and the
            Employee did not receive a periodic award).

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS

COMMENCEMENT OF BENEFITS.

The Insurance Company will begin paying Monthly Benefits in amounts determined from the Schedule when it receives due proof that:

(1)  the Employee became Disabled while insured for this Long Term Disability Insurance; and

(2)  his Disabilty has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

DURATION OF BENEFITS.

The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:

(1)  the date the Employee ceases to be Disabled; or

(2)  whichever of the following dates is applicable to the Employee:

| Age When Disability Began | Date Monthly Benefits Cease |
|---|---|
| Age 62 or under | The later of:  (a) the Employee's 65th birthday; or (b) the date the 42nd Monthly Benefit is payable; |
| Age 63 | The date the 36th Monthly Benefit is payable; |
| Age 64 | The date the 30th Monthly Benefit is payable; |
| Age 65 | The date the 24th Monthly Benefit is payable; |
| Age 66 | The date the 21st Monthly Benefit is payable; |
| Age 67 | The date the 18th Monthly Benefit is payable; |
| Age 68 | The date the 15th Monthly Benefit is payable; |
| Age 69 or over | The date the 12th Monthly Benefit is payable. |

000034

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

**MENTAL ILLNESS, ALCOHOLISM AND DRUG ABUSE LIMITATION.**

The Insurance Company will pay Monthly Benefits for no more than 24 months during an Employee's lifetime for Disability or Residual Disability caused or contributed to by mental illness, alcoholism or drug abuse while the Employee is not confined in a hospital. An Employee will be considered confined in a hospital only if he is confined continuously for at least 14 days in a hospital licensed to provide care and treatment for the condition causing the Disability.

EXHIBIT A

000035

LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

## LONG TERM DISABILITY BENEFITS (Continued)

### PRE-EXISTING CONDITION LIMITATION.

The Insurance Company will not pay Monthly Benefits for any period of Disability which results, directly or indirectly, from an Injury or Sickness for which the Employee, during the 1 months prior to the most recent Effective Date of his insurance: (1) incurred expenses; (2) received medical treatment; (3) took prescribed drugs or medicines; or (4) consulted a physician. This limitation will not apply to a period of Disability which begins more than 1 months after the most recent Effective Date of the Employee's Insurance.

### CONTINUITY OF COVERAGE AND PRE-EXISTING CONDITION LIMITATION.

The Pre-existing Condition Limitation will be waived, as described below, for an Employee who was insured on the day before the Effective Date of this policy under a group long term disability policy: (a) sponsored by the Employer; and (b) replaced by this policy; provided such Employee:

(1)  is in Active Service on the Effective Date of this Policy; and

(2)  has fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy.

However, if such Employee:

(1)  is in Active Service on the Effective Date of this policy; and

(2)  has not fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy because the time period required prior to start of Disability has not been satisfied;

any portion of time which may have been satisfied under such Pre-existing Condition Limitation will be applied toward the satisfaction of that time period requirement of the Pre-existing Condition Limitation of this policy.

If Monthly Benefits are determined to be payable, they will be paid according to the provisions of this policy.

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

SUCCESSIVE PERIODS OF DISABILITY.

Separate periods of Disability resulting from the same or related causes will be considered one period of Disability unless separated by the Employee no longer being qualified to receive Monthly Benefits for at least 6 consecutive months.

Separate periods of Disability resulting from unrelated causes will be considered one period of Disability unless separated by a period of at least one full day, during which the Employee is no longer qualified to receive Monthly Benefits.

These provisions do not apply:

    (1)  to the Benefit Waiting Period; or

    (2)  when the Employee becomes eligible for benefits under any group long term disability policy.

000037

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**EXCLUSIONS.**

No Monthly Benefits will be paid if the Employee's Disability or Residual Disability results, directly or indirectly, from:

      (1)   injuries intentionally self-inflicted while sane or insane; or

      (2)   any act or hazard of a declared or undeclared war.

No Monthly Benefits will be paid for a period of Disability or Residual Disability when the Employee is not under the care of a licensed physician.

000038

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

### LONG TERM DISABILITY BENEFITS (Continued)

**FAMILY SURVIVOR BENEFITS.**

The Insurance Company will pay Family Benefits as set forth below for up to 3 months if:

    (1)   the Employee becomes Disabled while insured for Family Benefits;

    (2)   the Disability has continued for at least 6 months beyond the Benefit Waiting Period; and

    (3)   the Employee dies while Monthly Benefits are being paid for that Disability and the Insurance Company receives due proof of death.

**PAYMENT OF FAMILY BENEFITS.**

Family Benefits will be payable Monthly beginning one month after the Employee's death. Family Benefits will be paid to the Employee's lawful spouse if living. If the lawful spouse is not living when any Family Benefit is due, it will be paid in equal shares to each child of the Employee. No Family Benefits will be paid if there is no lawful spouse or child.

The term child means the Employee's unmarried child (including a stepchild living with the Employee at the time of death) who is less than 21 years old. Family Benefits may not be assigned. Payment to anyone as provided above will release the Insurance Company from all liability for Family Benefits to the extent of the payments made.

**AMOUNT OF FAMILY BENEFITS.**

The amount payable for Family Benefits will be equal to 100% of the sum of:

    (1)   the Monthly Benefit due for the last full month of Disability before the Employee's death; and

    (2)   any amount by which such Monthly Benefit was reduced because of wage or profit received for work performed.

000039

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

## PREMIUMS

**PREMIUM PAYMENT.** The first premium will be due on the Effective Date. After that, premium will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment. The Policyholder and the Insurance Company may agree to change the method of premium payment from time to time. Premiums are payable at the Home Office of the Insurance Company or to an authorized agent of the Insurance Company.

**PREMIUM DUE DATE.** After the Effective Date, the Premium Due Date will be the day of the month with the same number as the Anniversary Date or the last day of a month in which there is no day with the same number as the Anniversary Date. If the Policyholder and the Insurance Company agree that premiums will be paid on a quarterly, semi-annual or annual basis, the Premium Due Date will be at the appropriate regular interval, quarterly, semi-annually or annually.

**MONTHLY STATEMENT DATE.** If premiums are to be paid monthly, the Monthly Statement Date will be the same as the Premium Due Date. If premiums are to be paid on a quarterly, semi-annual or annual basis, the Monthly Statement Date will be the day in each month with the same number as the Premium Due Date.

**MONTHLY PREMIUM STATEMENT.** If premiums are due monthly, a Monthly Premium Statement will be prepared as of the Premium Due Date. This Monthly Premium Statement will show the premium due. If premiums are due quarterly, semi-annually or annually, a Monthly Premium Statement will be prepared as of the Monthly Statement Date for the time from the Monthly Statement Date to the next Premium Due Date. This Monthly Statement will reflect any pro rata premium charges and credits due to changes in the number of insured persons and changes in insurance amounts that took place in the preceding month.

**SIMPLIFIED ACCOUNTING.** To simplify the accounting process, premium adjustments will be made on the Monthly Statement Date that is the same as or next follows the date that (1), (2) or (3) below takes place.

> (1) A person becomes insured.
>
> (2) The amount of insurance on a person changes, but not due to revision of the Schedule.
>
> (3) A person ceases to be insured.

000040

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

PREMIUMS   (Continued)

(Applicable to Class I Only)

**MONTHLY PREMIUM RATE.**  The premium will be determined at the rate of $.42 per month for each $100 of Covered Payroll.

Covered Payroll for an Employee will mean his monthly rate of Basic Earnings for the insurance month prior to the date such determination is made.  However, an Employee's Covered Payroll will not include any part of his monthly Basic Earnings which exceed $7,500.

**CALCULATION OF PREMIUMS.**  The premium will be calculated by multiplying the total amount of Covered Payroll on the Premium Due Date by the Monthly Premium Rate applicable on that date.  If the Policyholder and the Insurance Company agree to a change in the method of premium payment or to a change in the Anniversary Date, an appropriate pro rata adjustment will be made in the premium due.

**CHANGES IN PREMIUM RATES.**  The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice.  No change in rates will be made until 12 months after the Effective Date.  An increase in rates will not be made more often than once in a 12 month period.  However, the Insurance Company reserves the right to change the rates at any time if: 1) the terms of the policy change; 2) a division, subsidiary, affiliated company or eligible class is added or deleted from the policy; 3) there is a change in the factors bearing on the risk assumed; or 4) any federal or state law or regulation is amended to the extent that the Company's benefit obligation is affected.  If an increase in rates takes place on a date that is not a Premium Due Date, a pro rata premium will be due on the date of the increase.  The pro rata premium will apply the increase from the date of the increase to the next Premium Due Date.  If a decrease in rate takes place on a date that is not a Premium Due Date credit will be granted.  The pro rata credit will apply for the decrease from the date of the decrease to the next Premium Due Date.

000044

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

---

PREMIUMS  (Continued)

(Applicable to Class II Only)

**MONTHLY PREMIUM RATE.**  The premium will be determined at the rate of $2.04 per month for each $100 of Covered Payroll.

Covered Payroll for an Employee will mean his monthly rate of Basic Earnings for the insurance month prior to the date such determination is made. However, an Employee's Covered Payroll will not include any part of his monthly Basic Earnings which exceed $4,500.

**CALCULATION OF PREMIUMS.**  The premium will be calculated by multiplying the total amount of Covered Payroll on the Premium Due Date by the Monthly Premium Rate applicable on that date. If the Policyholder and the Insurance Company agree to a change in the method of premium payment or to a change in the Anniversary Date, an appropriate pro rata adjustment will be made in the premium due.

**CHANGES IN PREMIUM RATES.**  The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 12 months after the Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates at any time if: 1) the terms of the policy change; 2) a division, subsidiary, affiliated company or eligible class is added or deleted from the policy; 3) there is a change in the factors bearing on the risk assumed; or 4) any federal or state law or regulation is amended to the extent that the Company's benefit obligation is affected. If an increase in rates takes place on a date that is not a Premium Due Date, a pro rata premium will be due on the date of the increase. The pro rata premium will apply for the increase from the date of the increase to the next Premium Due Date. If a decrease in rates takes place on a date that is not a Premium Due Date credit will be granted. The pro rata credit will apply for the decrease from the date of the decrease to the next Premium Due Date.

000042

EXHIBIT A

.NG TERM DISABILITY INCOME POLIC.

## CANCELLATION OF POLICY

### NOTICE OF CANCELLATION.

The Policyholder or the Insurance Company may cancel the policy as of any Premium Due Date by giving written notice at least 31 days in advance of that date.

If a premium is not paid when due, the policy will automatically be cancelled as of the Premium Due Date, except as set forth below.

The Insurance Company may cancel the policy as of any premium due date if the number of insured Employees is less than 10 or less than 75% of those eligible.

### GRACE PERIOD.

If, before a Premium Due Date, the Policyholder has not given written notice to the Insurance Company that the policy is to be cancelled, a Grace Period of 31 days will be granted for the payment of each premium after the initial premium. The policy will stay in effect during that time. If any premium is not paid by the end of the Grace Period, the policy will automatically be cancelled at the end of the Grace Period; except that, if the Policyholder has given written notice in advance of an earlier date of cancellation, the policy will be cancelled as of the earlier date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time the policy was in force.

000043

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

### PAYMENT OF BENEFITS

**TO WHOM PAYABLE.** Any benefits that are payable for Disability will be paid to the Employee.  Family Benefits will be paid to the eligible survivor(s) according to the terms of that section.

If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt for any payment due him, such payment will be made to his legal guardian.  However, if no request for payment has been made by his legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed his custody and support.

If an Employee dies while any of his Disability benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee:  spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment in the manner described above will release the Insurance Company from all liability to the extent of any payment made.

**TIME OF PAYMENT.** Any Disability benefits will be paid at regular intervals of not more than one month.  Any balance which remains unpaid at the end of any period for which the Insurance Company is liable will be paid at that time.

000044

EXHIBIT A

LONG TERM DISABILITY INCOME POLICY

---

### PROVISIONS

**ENTIRE CONTRACT.** The entire contract will be made up of the policy, the application of the Policyholder, a copy of which is attached to the policy, and the applications, if any, of the Employees.

**POLICY CHANGES.** Changes may be made in the policy only by amendment signed by the Policyholder and by the Insurance Company acting through its President, Vice President, Assistant Vice President, Director or Assistant Director. No agent may change or waive any terms of the policy.

**STATEMENTS NOT WARRANTIES.** All statements made by the Policyholder or by an insured Employee will be deemed representations and not warranties. No statement made by the Policyholder or by the Employee to obtain insurance will be used to void or reduce the insurance unless it is made in writing and is signed by the Policyholder or the Employee and a copy is sent to the Policyholder, the Employee or his Beneficiary.

**NOTICE OF CLAIM.** Written notice of claim must be given to the Insurance Company within 30 days after the occurrence or start of the loss on which a claim is based. If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible.

**CLAIM FORMS.** When the Insurance Company receives the notice of claim, it will give to the claimant, or to the Policyholder for the claimant, the claim forms it uses for filing proof of loss. If the claimant does not get these claim forms within 15 days after the Insurance Company receives notice of claim, he will be considered to have met the proof of loss requirements if he submits written proof of loss within 90 days after the date of loss. This proof must describe the occurrence, character and extent of the loss for which a claim is made.

**PROOF OF LOSS.** Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. Upon request, written proof of continued Disability and of regular attendance of a physician must be given to the Insurance Company within 30 days of such request.

**PHYSICAL EXAMINATION.** The Insurance Company, at its own expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require.

**LEGAL ACTIONS.** No action at law or in equity will be brought to recover on the policy until at least 60 days after proof of loss has been filed with the Insurance Company. No action will be brought at all unless brought within 3 years (Kansas: 5 years; South Carolina: 6 years), after the time within which proof of loss is required by the policy.

**TIME LIMITATIONS.** If any time limit set forth in the policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity is less than that permitted by the law of the state in which the Employee lives when the policy is issued, then the time limit provided in the policy is extended to agree with the minimum permitted by the law of that state.

000045

EXHIBIT A

LM-6N32

**PHYSICIAN/PATIENT RELATIONSHIP.** The Employee will have the right to choose any physician who is practicing legally. The Insurance Company will in no way disturb the physician/patient relationship.

**CERTIFICATES.** The Insurance Company will issue to the Policyholder for delivery to each insured Employee an individual certificate. The Policyholder will be responsible for distributing the certificates to its Employees. The certificate will show the benefits provided under the policy. It will set forth any changes in benefits due to age and to whom benefits will be paid. Nothing in the certificate will change or void the terms of the policy.

EXHIBIT  A

000046

LONG TERM DISABILITY INCOME POLICY

## MISCELLANEOUS PROVISIONS

**INSURANCE DATA.** The Policyholder will give the Insurance Company all of the data that it needs to calculate the premium and all other data that it may reasonably require. Failure of the Policyholder to give this data will not void or continue an Employee's insurance. The Insurance Company has the right to examine the Policyholder's records relative to these benefits at any reasonable time while the policy is in effect. It also has this right until all rights and obligations under the policy are finally determined.

**MALE PRONOUN.** The male pronoun as used herein will be deemed to include the female.

**INCORRECT PREMIUM PAYMENT.** Premiums paid in error for a person who is not eligible to be insured, or for a person after his insurance has ceased, will be refunded without interest when requested by the Policyholder. This premium will not be refunded, however, for more than a 6 month period nor for any period before the last Anniversary Date.

**ADMINISTRATION.** The Insurance Company will deal solely with the Policyholder who will be deemed the representative of each Employee. Any action taken by the Policyholder will be binding on the Employees.

**NOT IN LIEU OF WORKERS' COMPENSATION.** The policy is not in lieu of and does not affect requirements for coverage under workers' compensation laws.

000047

EXHIBIT A

LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

This rider amends the policy to which it is attached.  It replaces any previous rider as of the effective date stated below.

## AFFILIATED OR SUBSIDIARY EMPLOYERS

Classes of employees of the employers named below are eligible to be covered by this policy.

Coherent Scanning Systems Division,  Pittsford, NY
(formerly Tropel)

Coherent Reddins,  Redding, CA
(formerly EMT)

Laser Inc.,  Sturbridge, MA

Coherent,  Palo Alto, CA

Coherent, Inc. Component Group,  Auburn, CA

Lambda Physik,  Bedford, MA

# EXHIBIT A

No other policy provision or condition is changed in any way by this rider.

| Effective date<br>   July 1, 1980 | at the hour stated in the policy | Part of Policy No.<br>   LK-5957 |
|---|---|---|
| Issued To:<br>   COHERENT INC. | | |

000048

LM-6N34

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We, COHERENT INC.

whose main office address is Palo Alto, California

hereby apply to the Life Insurance Company of North America for Group Policy

No. LK-5957

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate.  One part is to be attached to the Group
Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

COHERENT INC.
(Full or Corporate Name of Applicant)

Signed at_____  By_____
                                              (Signature and Title)

On_____  Witness_____
        (To be signed by Licensed Resident Agent where required by law)

LM-1K59      (This Copy is To Remain Attached To The Policy)

------------------------------------------------------------------------

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We, COHERENT INC.

whose main office address is Palo Alto, California

hereby apply to the Life Insurance Company of North America for Group Policy

No. LK-5957

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate.  One part is to be attached to the Group
Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

COHERENT INC.
(Full or Corporate Name of Applicant)                    EXHIBIT A

Signed at_____  By_____
                      000049                  (Signature and Title)

On_____  Witness_____
        (To be signed by Licensed Resident Agent where required by law)

LM-1K59          (This Copy is To Be Returned To Us)

LIFE INSURANCE COMPANY OF NORTH AMERICA

## AMENDATORY RIDER

This rider amends the policy to which it is attached. It replaces any previous rider as of the effective date stated below.

In consideration of the premium for the policy to which this rider is attached, the policy is amended as follows:

I.   It is understood and agreed that the following conditions will apply in the event an Insured is granted leave of absence:

    1.   Coverage will continue during an unpaid leave or leave of absence granted for a period of six months or less provided:

        (a)  the Policyholder pays the premium for such period, and

        (b)  the Company is notified in advance.

    2.   Coverage will be suspended during a sabbatical leave or leave of absence granted for a period of more than six months, but coverage will be reinstated on the date of the Insured's return to full-time active employment with the Policyholder following such sabbatical leave or leave of absence.

    Coverage for more than six months will be at the option of the Company, and if such coverage is provided it will be accomplished by letter of intent from the Company to the Policyholder.

II.  It is further understood and agreed that entry into the Armed Forces for less than 30 days is not considered full-time active duty for the purpose of the insurance.

# EXHIBIT A

No other policy provision or condition is changed in any way by this rider.

| Effective date | | Part of Policy No. |
|---|---|---|
| January 1, 1990 at the hour stated in the policy | | LK-5957 |
| Issued To: COHERENT, INC. | | |

LK-5957    (R-3)

000050